Citation Nr: 1722222 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 16-54 619 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs 
Pension Management Center in St. Paul, Minnesota


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death. 


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

Patricia A. Talpins, Associate Counsel 



INTRODUCTION

The Veteran had active duty service from February 1952 to November 1953. During his period of service, he was awarded the Combat Infantry Badge. On January [REDACTED], 2015, he passed away at the age of 84. The Appellant is the Veteran's surviving spouse.

This matter comes before the Board of Veterans Appeals (BVA or Board) on appeal from a May 2016 rating decision by the Department of Veterans Affairs (VA) Pension Management Center in St. Paul, Minnesota which denied the claim on appeal. See also July 2016 rating decision (service connection for cause of death remained denied). A notice of disagreement was received in July 2016, a statement of the case was issued in October 2016, and a substantive appeal was also received in October 2016. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

For the record, this appeal was processed using the Veteran's Benefits Management System (VBMS). In addition to the VBMS file, there is a Virtual VA paperless claims file associated with the claim.


FINDINGS OF FACT

1. The Veteran died on January [REDACTED], 2015. His Death Certificate lists the immediate cause of death as Alzheimer's Dementia. No other medical conditions are listed as "other significant conditions contributing to death but not resulting in the underlying cause of death." 

2. At the time of his death, the Veteran was not service-connected for any disabilities. 

3. There is insufficient competent evidence indicating that the Veteran suffered a traumatic brain injury in service, much less a traumatic brain injury that was moderate or severe in nature. 


CONCLUSION OF LAW

The criteria for establishing service connection for the cause of the Veteran's death have not been met. 38 U.S.C.A. §§ 1110, 1154(a), 1154(b), 1310, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310, 3.312 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to notify and assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a), 3.655 (2016). In the context of a claim for Dependency and Indemnity compensation (DIC), which includes a claim of service connection for the cause of a veteran's death, 38 U.S.C.A. § 5103(a) notice must generally include (1) a statement of the conditions, if any, for which a veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. Unlike a claim to reopen, an original DIC claim imposes upon VA no obligation to inform a DIC claimant who submits a nondetailed application of the specific reasons why any claim made during the deceased veteran's lifetime was not granted. Where a claimant submits a detailed application for benefits, VA must provide a detailed response. Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007). 

Initially, the Board observes that neither the Appellant nor her representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Turning to the record, a review of the Appellant's December 2015 VA Application for benefits reveals that the Appellant marked the box "DIC" in response to the question of what benefit she was claiming. In that same section, the Appellant wrote "see attached statement." In that statement, the Appellant and/or her representative essentially argued that service connection for the cause of the Veteran's death should be granted on the basis that (1) the Veteran's award of the Combat Infantry Badge is evidence that he was exposed to explosive blasts in service; (2) medical research indicates that explosive blasts are common causes of traumatic brain injuries (TBI) in active-duty military personnel; (3) medical research also indicates that TBIs may increase a person's risk of developing Alzheimer's disease; and (4) a contributing cause of the Veteran's death was Alzheimer's disease. See correspondence dated December 2015. Therefore, based on these propositions, DIC was warranted "since there is no doubt [the Veteran] served in combat and according to legitimate research, this increased his TBI which in turn increased his risk to Alzheimer's." 


In regards to the Board's duty to notify, a review of the claims file reveals that it does not contain any correspondence from the RO to the Appellant that satisfies the VCAA. However, given the unusual theory and factual scenario of this specific case, the Board finds that the RO's failure to provide 38 U.S.C.A. § 5103(a) notice to the Appellant has not prejudiced her because such notice would not/could not have assisted the Appellant in substantiating her DIC claim. In this regard, if the RO had sent the Appellant a letter for the purpose of complying with 38 U.S.C.A. § 5103(a), the letter would only have informed the Appellant of information that she already knew and is not pertinent to her claim - which was that (1) the Veteran was not service-connected for any disabilities at the time of his death; (2) there was no evidence or information she could submit to substantiate a DIC claim based on a previously service-connected condition since the Veteran was not service-connected for any disabilities at the time of death; and (3) the RO could not provide the Appellant with an explanation of any evidence or information that would be required to substantiate a DIC claim based on a condition not yet service-connected because the Veteran did not have any unadjudicated service connection claims at the time of death. 

Contrary to traditional arguments associated with claims to service connection for the cause of a veteran's death (i.e., death was caused by or related to service-connected disability), the Appellant's theory of entitlement is based upon an injury never reported or claimed by the Veteran that medical studies have now shown, in certain circumstances, increase the risk of developing the Alzheimer's disease that ultimately caused the Veteran's death. In support of her claim, the Appellant has submitted several articles about TBIs and Alzheimer's dementia, as well as a letter written by the Veteran in service that references an explosion he was exposed to in service. She also submitted a statement received by VA in June 2016 that said the "veteran DID NOT receive any treatment "in service" for DEMENTIA. The claim for DIC is based on medical studies showing that combat veterans suffer from TBI's [,] which then increases the risk of those veterans developing Dementia/Alzheimer later in life. The veteran was a combat veteran due to being awarded [the] COMBAT INFANTRY BADGE." 

In providing the above-referenced information, the Board finds that the Appellant has demonstrated actual knowledge of the evidence necessary to support her claim; and a remand of this appeal for the issuance of a VCAA letter would serve no useful purpose and only unnecessarily delay the adjudication of the Appellant's claim. Therefore, in light of the specific circumstances of this case, the Board finds that the RO's failure to comply with the notification requirements of the VCAA is harmless error. 

Regarding the duty to assist, the Board initially observes that while the claims file contains the Veteran's DD 214 Certificate of Release or Discharge from Active Duty (DD 214), the Veteran's service treatment records are not contained in the file despite VA's attempts to obtain them. See, e.g., PIES requests and responses dated in December 2015 and April 2016. When service records are unavailable through no fault of a veteran, the Board has a heightened duty to assist, as well as an obligation to explain its findings and conclusions and carefully consider the benefit-of-the-doubt rule. Washington v. Nicholson, 19 Vet. App. 362, 369-70 (2005); Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). As will be explained below, the Board finds that the heightened duty to assist has been met.

Subsequent to filing her claim for cause of death, the Appellant submitted a letter to the RO from the National Personnel Records Center (NPRC) that notified her that the Veteran's military records could not be found and were presumed to have been destroyed in a July 12, 1973 fire. The NPRC provided the Appellant with an NA Form 13038 Certification of Military Service to be used to obtain information about the Veteran from alternative record sources. See September 2015 letter from NPRC. A Certification of Military Service record was subsequently associated with the claims file in December 2015. 

In January 2016, the RO obtained records from the National Archives and Records Administration that included a U.S. Army SGO Hospitalization File Listing related to specific treatment of various veterans (including the Veteran in this case) in Korea during the time frame from 1950 to 1953. In April 2016, the RO sent a letter to the Appellant requesting that she complete and return two VA forms (NA Form 13055 and NA Form 13075) for the purposes of attempting to obtain the Veteran's service treatment records from alternate sources and to verify the Veteran's service dates and character of discharge. In response, the Appellant completed and returned both forms. She wrote on VA Form 13055 that the Veteran "never sought medical treatment" in service. Thereafter, it appears the RO conducted a CAPRI Enterprise search in July 2016 in an effort to locate any outstanding VA medical records, without success. Lastly, in August 2016, the RO sent a letter to the Appellant asking for medical evidence showing the Veteran was diagnosed and treated for a TBI since service, and copies of medical records surrounding the Veteran's death. In addition, the RO requested that the Appellant complete and return VA Forms 21-4142 and 21-4142a so that the RO could obtain treatment records on her behalf. It appears that the Appellant did not respond to the RO's request, as there are no completed VA Forms 21-4142 or 21-4142 in the claims file and the file does not contain any post-service medical records. 

Given the actions set forth above, the Board concludes that all reasonable efforts have been made by the VA to obtain evidence necessary to substantiate the Appellant's claim. Therefore, no further assistance to the Appellant with the development of evidence is required; and the Board will proceed with a merits review of the appeal. 

Service connection for the cause of the Veteran's death

The Appellant seeks service connection for the cause of the Veteran's death from Alzheimer's dementia. As mentioned previously, she essentially claims that the Veteran suffered a TBI from an explosive blast while serving in combat in 1952 and 1953; and that this TBI increased his risk of developing Alzheimer's disease, a contributing cause of his death. 

For reasons set forth below, the Board finds that the preponderance of the evidence is against this claim. As such, the appeal must be denied. 

Dependency and indemnity compensation is payable to the surviving spouse of a veteran if the veteran died from a service-connected disability. 38 U.S.C.A. 
§ 1310; 38 C.F.R. § 3.5. The death of a veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the veteran, including, particularly, autopsy reports. 
38 C.F.R. § 3.312(a). The service-connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.12(b).
 
Contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312 (c)(1). 

In order to establish service connection for the cause of death, there must be 
(1) evidence of death; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and death. Hickson v. West, 12 Vet. App. 247, 253 (1999). As with any claim, when there is an approximate balance of positive and negative evidence regarding any matter material to the claim, the claimant shall be given the benefit of the doubt. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991). Equal weight is not necessarily accorded to each piece of evidence contained in the record; not every item of evidence necessarily has the same probative value.

In the present case, at the time of death, the Veteran had not been awarded service connection for any medical disabilities. The Veteran's certificate of death reflects that he died on January [REDACTED], 2015, as the result of a Alzheimer's dementia. No other medical conditions were listed as "other significant conditions contributing to death but not resulting in the underlying cause of death." 

The Appellant has not argued that the cause of the Veteran's death is related to a disability for which the Veteran was seeking service connection at the time of death. Rather, as mentioned previously, the Appellant believes that the Veteran suffered a TBI from an explosive blast during combat service; and that this in-service TBI increased his risk of developing Alzheimer's disease. In support of her claim, the Appellant submitted several medical articles. Specifically, the Appellant provided the RO with an article titled the "Alzheimer's Association Report: 2015 Alzheimer's disease facts and figures" that sets forth several risk factors of Alzheimer's disease, one of which is TBI. TBI is defined as the disruption of normal brain function caused by a blow or jolt to the head or penetration of the skull by a foreign object. In this regard, the article specifically notes that not all blows or jolts to the head disrupt brain function (i.e., would not be diagnosed as TBIs). The article states that moderate and severe TBIs increase the risk of developing Alzheimer's disease and other dementias, while repeated mild TBIs may (or may not) promote neurodegenerative disease. Id., page 337 - section 2.2.4.8 (emphasis added). A moderate TBI is defined as a head injury resulting in loss of consciousness or post-traumatic amnesia that lasts more than 30 minutes. A severe TBI is said to occur when there is a loss of consciousness or post-traumatic amnesia lasts more than 24 hours. 

Another article submitted by the Appellant titled "Traumatic brain injury" essentially states that TBIs are caused by a blow or other traumatic injury to the head or body; and that the degree of damage of a TBI can depend on several factors, including the nature of the event and the force of impact. The article notes that a factor to be considered in determining if a TBI has occurred is whether a veteran has been exposed to "a blast, as from an explosive device," which can cause widespread brain damage; and that explosive blasts are a common cause of TBIs in active-duty personnel. The article additionally states that a TBI may increase the risk of diseases that result in the gradual degeneration of brain cells and gradual loss of brain functions, such as Alzheimer's disease. Articles titled "Study of Combat Veterans Finds Link Between TBI and Dementia," "Blast Injuries and the Brain," and "Military-related traumatic brain injury and neurodegeneration" have also been associated with the claims file, as has a single page taken from a Clinical Process Guidelines book utilized by VA and the Department of Defense for Management of Concussions/TBI. All of this evidence essentially reiterates the premises that veterans are exposed to blasts and explosions in a combat setting; that explosive blasts are a common cause of TBIs in active-duty personnel; and that there is an association between moderate and severe TBIs and an increased risk of developing Alzheimer's disease. 

For the record, the Board does not dispute the medical findings set forth in the literature provided by the Appellant. In fact, VA has enacted its own regulation geared towards veterans who have suffered TBIs and subsequently develop Alzheimer's dementia. See 38. C.F.R. § 3.310(d). This regulation specifically applies to veterans who have been service-connected for a TBI; and states that in the absence of clear evidence to the contrary, pre-senile dementia of the Alzheimer type, frontotemporal dementia and dementia with Lewy bodies will be held to be the proximate result of the service-connected TBI if such conditions manifest within 15 years following a moderate to severe TBI. Id. 
 
Thus, the questions before the Board in this case are (1) whether the Veteran was exposed to an explosive blast in service, and (2) did he suffer a moderate or severe TBI as a result of this blast. 

Recently, the Appellant submitted a letter that appears to have been written by the Veteran to his parents in March 1953. In this letter, the Veteran writes that he was walking out of his bunker one day and a "round came in" and exploded right in front of him. In the letter, the Veteran stated that "[the explosion] picked me up and through [him] across the bunker and up against the bunker wall." He stated that the explosion shocked him so badly that he had to be put to bed, but that he was okay now (i.e., at the time he wrote the letter now). He stated that he did not get hurt, but the explosion was a close call. See evidence received by the Board in May 2017, with waiver. 

In general, witnesses are found to be competent when reporting things of which they have first-hand knowledge. The Board finds that the Veteran was competent to report in his letter to his parents that an ammunition round exploded in front of him; and as a result, he was thrown across his bunker and against the wall. Given the Veteran's competency to report his experience in service and his award of the Combat Infantry Badge, the Board finds it is as least as likely as not that the Veteran was in fact exposed to an explosive blast during service. However, this finding is limited to the Veteran's involvement with an explosive blast in service. It is not a factual determination that the Veteran suffered a TBI in service as a result of the explosion. 

In a statement dated in October 2016, the Appellant's representative argues that VA should concede that the Veteran's exposure to blasts/explosions could have, "as likely as not," contributed to the development of his Alzheimer's. See October 2016 statement in support of claim. However, while the evidence in this case supports the findings that the Veteran was involved in at least one explosive blast during service, and that explosive blasts have been found to be common causes of TBI's in active-duty military personnel, there is no competent evidence in this case indicating that the Veteran suffered a head injury, much less a TBI, as a result of the March 1953 (or any other) in-service explosive blast. 

In this regard, the Board observes that Veteran himself reported in his March 1953 letter to his parents that he was not hurt by the explosive blast; and even though he reported that the explosion shocked him so badly that he had to be put to bed, the Veteran never mentioned anything about his head being hurt or that he was knocked unconscious as a result of the explosive blast. Other evidence in the claims file includes a U.S. Army SGO Hospitalization File Listing related to treatment of veterans in Korea from 1950 to 1953. These records reference the Veteran by his military service number; and reveal that he was admitted for five days to the U.S. Army hospital in May 1952 for treatment of acute or unqualified pharyngitis. After 5 days, he was released to duty for general service. No other medical treatment pertaining to the Veteran is recorded in this document. 

In terms of the absence of evidence, the Board observes that the claims file does not contain any of the Veteran's post-service medical records. Although these records could possibly have documented references made by the Veteran during his lifetime to his medical providers about having a head injury in service or noting post-service symptomatology that could arguably be related to a head injury or TBI, the Board cannot assume such evidence exists, much less support the Appellant's claim, since the RO was unable to locate any post-service VA medical records pertaining to the Veteran, and the Appellant did not supply any records or sign medical release forms that would have allowed VA to try to obtain private medical records. 

Lastly, even if the Board were to assume for the sake of argument that the Veteran suffered a TBI in service, there is absolutely no evidence of record indicating that this presumed TBI was either moderate or severe in nature. The medical research pertaining to TBIs only supports the premise that there is an increased risk of developing Alzheimer's disease when a person suffers a TBIs that is considered to be moderate or severe. As set forth in one of the articles referenced above, a moderate TBI is defined as a head injury resulting in a loss of consciousness or post-traumatic amnesia that lasts more than 30 minutes. A severe TBI is said to occur when there is a loss of consciousness or post-traumatic amnesia that lasts more than 24 hours. No evidence in the claims file even suggests that the Veteran lost consciousness as a result of any explosive blast during service. In fact, the Veteran's letter to his parents cited above supports the finding that the Veteran did not lose consciousness as a result of the documented March 1953 explosive blast. 

In making the above-referenced findings, the Board sympathizes with the Appellant for her loss, and acknowledges her sincere belief that the Veteran must have suffered a TBI in service because he was involved in an explosion in service; and that this TBI increased his chances of developing Alzheimer's dementia. However, neither the Appellant nor the Veteran himself while living, would be considered competent to self-diagnose a concussion or to establish that the Veteran suffered residual TBI symptoms during service or post-service as these are complex medical matters requiring training and experience. 

In this regard, the Board notes for the record that it has considered whether VA should have obtained a medical opinion in this case. 38 U.S.C.A. § 5103A(a) requires VA to assist a claimant in obtaining a medical opinion or examination whenever such an opinion is "necessary to substantiate the claimant's claim" and only excuses VA from making reasonable efforts to provide such assistance, if requested, when "no reasonable possibility exists that such assistance would aid in substantiating the claim." Wood v. Peake, 520 F.3d 1345, 1348-49 (Fed. Cir. 2008); see also DeLaRosa v. Peake, 515 F.3d 1319, 1322 (Fed. Cir. 2008). Here, there is no relevant service record, medical, or lay evidence during or at any time after service for a medical examiner to consider, and there is no reasonable possibility that any medical opinion would aid in substantiating the claim. A medical examiner would have nothing on which to base an assessment of the likelihood that the Veteran suffered from a TBI and could only speculate on whether the March 1953 explosion reported by the Veteran in service resulted in the development of a TBI. 

In light of the foregoing, the Board is unable to grant the Appellant's representative's request that VA concede that the Veteran's exposure to a blast in service could have, "as likely as not," contributed to the development of his Alzheimer's because the preponderance of the evidence is against this claim. Therefore, the "benefit of the doubt" rule is not for application, and the Board must deny the claim. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for the cause of the Veteran's death is denied. 



____________________________________________
H.M. WALKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs